UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
KEITH ROBERTS,

                                            No. 06-CIV-2725 (CM)
                  Plaintiff,

        -against-                           NOTICE OF MOTION

METROPOLITAN LIFE INSURANCE
COMPANY,

                               Defendant.
-------------------------------------------------------------------x

DECISION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

McMahon, J:

       Plaintiff Keith Roberts ("plaintiff") brings this action against defendant Metropolitan Life

Insurance Company ("defendant") pursuant to the Employee Retirement Income Security Act of

1974 ("ERISA"), 29 U.S.C. § 1001.  Plaintiff claims that he is entitled to long-term disability

("LTD") benefits because he is totally disabled.  Defendant moves for summary judgment.

Since plaintiff's claim is barred by the statute of limitations, defendant's motion is granted.

### Factual Background[1]

       Plaintiff was a mortgage loan officer employed by Temple-Inland Forest Products

Corporation ("Temple-Inland") and a participant in its employee benefit program ("the Plan").

(Compl. ¶¶ 4, 6).   Plaintiff sustained injuries to his neck and back due to an automobile accident

in August 1996.  (Compl. ¶ 6).  Under the Plan, plaintiff received short-term disability benefits

from September 7, 1996 through March 7, 1997 as a result of his injuries.  (ML 373).

       Upon expiration of his short-term disability benefits, plaintiff began receiving long-term

---

[1]The facts of this case are undisputed, unless otherwise noted.

disability benefits.[2]  (ML 279).  Plaintiff's eligibility for long-term disability benefits was

contingent upon, *inter alia*, satisfying the Plan's definition of total disability: "completely and

continuously unable to perform each of the material duties of your regular job."  (ML 386).

Plaintiff was notified in August 1998 that after he had received long-term disability

benefits for 24 months, he could receive further payments only if he was "completely and

continuously unable to perform the duties of <u>any gainful work</u> or service for which [plaintiff is]

reasonably qualified taking into consideration [plaintiff's] training, education, experience, and

past earnings."  (ML 213, 386) (emphasis added).  Defendant requested updated information on

plaintiff's condition to determine whether plaintiff met the "total disability" standard.  (ML 213).

Plaintiff obliged, and his physician submitted a letter to the defendant indicating that plaintiff

was "totally disabled."  (ML 167).  Defendant submitted plaintiff's file to an independent

physician for evaluation.  The physician concluded that the evidence submitted did not establish

that plaintiff's condition would preclude him from returning to any sort of employment.  (ML

135).

After evaluating the claim, defendant informed plaintiff, by letter dated October 13, 1999,

that his long-term disability benefits would expire on October 31, 1999.  (ML 129).  The letter

stated that plaintiff could request a review of the determination within sixty days of the notice of

denial.  (ML 129).  Plaintiff submitted a timely appeal with additional medical reports on

October 27, 1999.  (ML 127).  On review, defendant affirmed its prior determination in a letter

dated January 3, 2000.  (ML 108).  The letter informed plaintiff that this determination

---

[2]For reasons unknown to this court, plaintiff's short-term disability benefits and long-term disability benefits apparently overlapped by two days of coverage; he began receiving long-term disability on March 6, 2007.

constituted the Plan's "final determination on appeal and completes the full and fair review of the initial decision." (ML 110).

Even though defendant informed plaintiff on January 3, 2000 that its determination was final, in February of 2000 plaintiff submitted additional evidence to support his claim for long-term disability benefits.  (ML 90, 93).  Defendant had no legal obligation to perform another evaluation, since plaintiff's claim had already gone through the only appeal process provided for in the Plan.[3]  Nevertheless, defendant submitted this newly obtained information to an independent physician for another evaluation.  The physician concluded that the additional information did not alter the conclusion that plaintiff was not totally disabled.  (ML 97).

In a letter dated March 10, 2000, defendant informed plaintiff that it had "completed a full and fair review of [plaintiff's] long term disability claim . . . No further administrative reviews are available."  (ML 86).  However, plaintiff refused to accept the finality of this decision and continued communications with the defendant on the subject of his long-term disability claim for the next three years.  Between April of 2000 and August of 2000, plaintiff submitted additional medical information to defendant, requested arbitration, and accused defendant of acting in bad faith. (ML 58, 73, 83).  On May 17, 2000 and again on August 14, 2000, defendant reiterated its final determination that plaintiff did not meet the definition of "totally disabled" under the Plan.  (ML 57, 75).  Plaintiff did not seek judicial review of this conclusion.

---

[3] The Plan states that "in the event a claim has been denied in whole or in part, you or your eligible survivor can request a review of your claim by Metropolitan.  This request for review should be sent . . . within 60 days after you or your eligible survivor received notice of denial of the claim."

On September 5, 2001 plaintiff submitted an up-to-date medical report to defendant. (ML 55). Defendant acknowledged receipt of this letter on September 24, 2001 and stated that "the information submitted is currently under review." (ML 54). In a letter dated October 30, 2001, defendant informed plaintiff once again that it had "completed its full and fair review of the decision to terminate [plaintiff's] claim" without altering his status. (ML 53).

On July 26, 2002, approximately nine months after defendant's sixth repudiation of plaintiff's claim, plaintiff sent an additional letter pursuing his claim for disability benefits. (ML 51). In a letter dated August 7, 2002, defendant responded that the information submitted was "currently under review." (ML 50). On September 23, 2002 defendant reiterated for the seventh time its decision to terminate plaintiff's benefits, and cited the previous correspondences on January 3, 2000, March 10, 2000 and May 17, 2000 communicating this information to the plaintiff. (ML 49).

Plaintiff was relentless. Even though his appeal rights had been exhausted more than two years earlier, plaintiff continued to submit further evidence of his medical condition and inquired into the status of his claim on five additional occasions between October 31, 2002 and March 28, 2003.[4] In response to each submission, defendant restated its previous decision to terminate benefits and informed the plaintiff that all administrative reviews had been exhausted.[5]

Plaintiff brought this suit on April 7, 2006 seeking long-term disability benefits, compensatory damages, and attorney's fees. Defendant moves for summary judgment on the

---

[4]Plaintiff submitted letters to defendant on October 31, 2002, December 20, 2002, January 17, 2003, February 26, 2003, and March 28, 2003. (ML 38, 40, 41, 44, 47).

[5]Defendant responded to plaintiff's letters on November 11, 2002, January 9, 2003, March 14, 2003, and April 11, 2003. (ML 37, 39, 43, 46).

grounds that plaintiff's claim is time-barred.  In the alternative, if plaintiff's claims are not time-barred, defendant argues that the Plan's decision to terminate long-term disability benefits was justified.

**Discussion**

**A. Standard of Review**

Rule 56(c) requires the court to grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  See also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In determining whether there is a genuine issue of material fact, the court must construe all evidence in a light most favorable to the party opposing the motion and draw all inferences in its favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Additionally, in a summary judgment motion, it is not the court's function to make determinations of credibility, weigh evidence, or draw legitimate inferences from the facts.  Id. These are functions reserved for the jury.  Id.  The party moving for summary judgment, in this case the defendant, has the initial burden of showing that there are no genuine issues of material fact.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  If the moving party has met this burden, the nonmoving party has the burden to come forward with specific facts demonstrating a genuine issue for trial and may not rely upon mere allegations or denials contained in his pleading.  FED. R. CIV. P. 56(c).

**B. Applicable Statute of Limitations**

Since ERISA claims do not have a prescribed statute of limitations, the courts of this

circuit apply the most analogous state statute of limitations, which is the six-year statute of

limitations for contract claims in New York.  See Miles v. New York State Teamsters

Conference Pension & Ret. Fund Employee Pension Benefit Plan, 698 F.2d 593, 598 (2d Cir.

1983).  New York law also provides, however, that when a written agreement between the

parties provides for a shorter statute of limitations, the shorter period governs.  N.Y. C.P.L.R. §

201 (Gould 2007); Mitchell v. Shearson Lehman Bros., Inc., 1997 WL 277381, at *2, 1997 U.S.

Dist. LEXIS 7323, at *6 (S.D.N.Y. May 23, 1997).

Here, the Plan provides for a three-year statute of limitations for filing claims.  Under the

heading, "Time Limits on Law Suits," the Plan states that, "No law suit may be started more than

3 years after the time proof must be given."  (ML at Ex. A.)  Plaintiff's cause of action is

therefore governed by a three-year statute of limitations.

## C. Plaintiff's Cause of Action is Time-Barred

The statute of limitations for ERISA actions begins to run "upon a clear repudiation [by

the plan] that is known, or should be known, to the plaintiff, regardless of whether the plaintiff

has formally applied for benefits."  Carey v. Int'l Bhd. of Elec. Workers Local 363 Pension Plan,

201 F.3d 44, 48 (2d Cir. 1999).  This standard requires that the plaintiff be "unequivocally

notified that his or her claim for benefits has been denied."  Yuhas v. Provident Life and Cas.

Ins. Co., 162 F. Supp. 2d 227, 231-32 (S.D.N.Y. 2001).  There is a disagreement among district

courts within the Second Circuit as to whether a cause of action accrues when benefits are denied

or when the appeals process is finalized.  Id. (citing Miele v. Pension Plan of New York State

Teamsters Conference Pension and Ret. Fund, 72 F. Supp. 2d 88, 98 n.7 (E.D.N.Y. 1999); Lewis

v. John Hancock Mut. Life Ins. Co., 6 F. Supp. 2d 244, 247 (S.D.N.Y. 1998); Manginaro v.

Welfare Fund of Local 771, I.A.T.S.E., 21 F. Supp. 2d 284, 294 n.4 (S.D.N.Y. 1998)).  I need

not weigh in on that issue, however, because plaintiff's filing is untimely even under the more

permissive standard.

Plaintiff asserts that his action is timely because the defendant did not unequivocally

notify him that his claim was denied, and as a result, the statute of limitations did not begin to

run even as late as August 7, 2002.  (Pl.'s Br. at 4).  Plaintiff contends that defendant's

communications led plaintiff to believe that the Plan's appeal process had not been completed

since four of  defendant's letters stated, "The information submitted is currently under review."[6]

(Pl.'s Br. at 4; ML 50, 54, 87, 92).  Defendant argues that the latest date the statute of limitations

began to run was on March 10, 2000.  (Def.'s Br. at 7).

Plaintiff is correct that on four occasions after defendant's "final" determination on

appeal, defendant informed plaintiff that his claim was under review.  However, defendant was

under no obligation to review the additional information submitted by the plaintiff; the fact that

it chose to do so voluntarily does not make its determination as of January 3, 2000 any less

"final."  See Yuhas, 162 F. Supp. 2d at 232.  In the January 3, 2000 letter, defendant stated that

"our previous decision to terminate [plaintiff's] claim for benefits was correct. . . Our

determination as noted above constitutes MetLife's final determination on appeal and completes

the full and fair review of the initial decision of your client's disability claim."  (ML 108, 110).

This language communicated to plaintiff that his claim was clearly and unequivocally denied.

Yuhas, 162 F. Supp. 2d at 232 (holding that "the ERISA Appeals Committee has reaffirmed the

_____

[6]Defendant sent letters on February 8, 2000, February 28, 2000, September 24, 2001, and
August 7, 2002 indicating that plaintiff's claim was currently under review.

denial of your LTD claim" and "no further consideration of plaintiff's claim will be extended in accordance with ERISA regulations" qualified as a clear and unequivocal notification that plaintiff's claim was denied).  Thus, even under the more permissive standard of <u>Manginaro</u>, the latest date on which the statute of limitations would have started to run was January 3, 2000.

For the next three years, plaintiff tried to revive his stale claim by submitting additional medical evidence.  However, in <u>Wesley v. NMU Pension and Welfare Plan</u>, 2002 WL 10486, at *5, 2002 U.S. Dist. LEXIS 23, at *14 (S.D.N.Y. Jan. 3, 2002) (citing <u>Patterson-Priori v. Unum Life Ins. Co. of Am.</u>, 846 F. Supp. 1102, 1106 (E.D.N.Y. 1994), the court held that "a tenacious plaintiff should not be allowed to renew stale claims merely by requesting reconsideration of final decisions."  The <u>Wesley</u> court underscored the policy rationale for its decision, one that is no less applicable in the case of LTD benefits than a pension plan, "If a Court were to rule that an applicant's cause of action is renewed each time a pension fund informally re-examines his pension request, pension funds would simply refrain from doing so."  <u>Id.</u> (citing <u>Patterson-Priori</u>, 846 F. Supp. at 1106).

On four occasions defendant reexamined plaintiff's claim after receiving additional medical information.  However, defendant could have chosen to ignore these submissions since a final determination had already been made on appeal.  As a result, defendant's communications to plaintiff that his claim was under review did not effectively change the date that the statute of limitations began to run.

Plaintiff argues that it is unclear whether defendant made a final determination of his claim since defendant informed plaintiff as late as August 7, 2002, "The information submitted is currently under review."  (Def.'s Br. at 4).  Plaintiff fails to mention, however, that defendant

informed plaintiff five times after the August 7, 2002 letter that the decision to terminate benefits was reaffirmed and no further administrative reviews were available. (ML 37, 39, 43, 46, 49).

Finally, even if plaintiff were correct that defendant's correspondence kept his claim alive until September 23, 2002, when he received the final denial of benefits, his claim is untimely under the three year statute of limitations set out in the Plan. Plaintiff filed his cause of action on April 7, 2006, which is 3 ½ years after September 23, 2002.

## CONCLUSION

Defendant's motion for summary judgment is granted. This constitutes the decision and order of this Court.

Dated: March 21, 2007

_____
U.S.D.J.

BY FAX TO ALL COUNSEL.